IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| ALLPRO STAFFNET LIMITED-LIABILITY COMPANY d/b/a ALLPRO HOMECARE SOLUTIONS | ) ) ) ) | |
| Plaintiff, | ) ) | NO. 3:25-cv-01483 |
| v. | ) ) ) | JUDGE CAMPBELL |
| UNITED STATES DEPARTMENT OF VETERANS AFFAIRS, | ) ) ) ) | |
| Defendant. | ) | |

**MEMORANDUM**

Plaintiff Allpro Staffnet LLC d/b/a Allpro Homecare Solutions ("Allpro") is a healthcare provider that provides in-home health services to veterans through the Community Care Program administered by the United States Department of Veterans Affairs (the "VA"). Without notice or explanation, in November 2025, the VA placed Allpro on an "administrative hold" pursuant to which it stopped referring new veteran-clients to Allpro, stopped renewing care authorizations for existing veteran-clients, and transferred some existing clients to new providers. On December 23, 2025, Allpro initiated this action by filing a Verified Complaint bringing claims under the Administrative Procedure Act ("APA"), 5 U.S.C. § 551, *et seq.*, and for violation of Due Process. (Doc. No. 1).

Pending before the Court are Allpro's Motion for Temporary Restraining Order (Doc. No. 6) and the VA's motion to dismiss for lack of subject matter jurisdiction (Doc. No. 32). For the reasons stated herein, the VA's motion to dismiss is **GRANTED** and Allpro's Motion for Temporary Restraining Order is **DENIED**.

## I. BACKGROUND

Allpro provides in-home health services to veterans in 32 states through the Community Care Program administered by the VA.[1] (¶ 2). The Community Care Program allows veterans to receive care in the community, including at-home care, rather than the VA system if certain requirements are met and the VA authorizes community care. (¶¶ 26, 27). If a veteran is authorized community care, the VA assigns a referral to a provider such as Allpro. Authorizations are typically limited to a specific period of time and for specific services. (¶ 40). Authorizations must be renewed when the episode of care expires. (*Id*.). The VA is responsible for care authorizations and renewals, and for referring or not referring veterans to a specific care provider in the first instance and with respect to renewals. (¶¶ 38-39).

Although care providers like Allpro receive referrals directly from the VA, the VA does not contract with care providers directly; it does so through its contracts with third-party administrators. The VA contracts with two third-party administrators – Optum Public Sector Solutions, Inc. ("Optum") and TriWest Healthcare Alliance Corporation ("TriWest") – who build and manage nationwide networks of care providers, administer claims, and perform related program operations. (¶¶ 33-35). Care providers contract with a TPA, receive referrals from the VA, and then submit their claims for payment to the TPA. (¶¶ 36, 46). To participate in a TPA's care provider network, care providers must maintain applicable state licensure, national provider identifiers, acceptable sanction histories, and quality standards, and they must comply with program rules and policies issued by the VA and the TPAs. (¶ 42).

---

[1] The Community Care Program was established in 2020. Prior to 2020, the VA provided home care to veterans through other programs.

Allpro has provided home care to veterans since 2009, and has been a care provider through Community Care Program since the program's inception in 2020. (¶¶ 48-54). At the time of the filing of the Verified Complaint, Allpro provided services to approximately 2,000 veterans, delivering in excess of 30,000 hours of care per week, under 43 VA Medical Centers and one VA Clinic across 32 states. (¶¶ 56, 103). In some of the areas where Allpro provides service, it is the only home care provider. (¶ 60).

On November 19, 2025, Optum informed Allpro that its participation in the VA Community Care Network was being placed "on hold" in accordance with a determination made by the VA CCN Provider Network Department and that, pursuant to the hold, Allpro would not receive new referrals. (¶ 84). Allpro also learned that the VA was transferring existing clients to other care providers. (¶¶ 108-112).

Initially, the VA provided no information directly to Allpro about the hold or the reasons for the hold. Not until after Allpro's attorneys sent a demand letter to the VA on December 17, 2025, did the VA provide a limited explanation for the hold. The VA stated:

> We have received dozens of complaints that were submitted directly to the U.S. Department of Veterans Affairs (VA), as well as to our Third-Party Administrators (TPAs). These complaints implicate potential issues involving Veteran safety, as well as potential waste of taxpayer dollars. Due to these concerns, VA placed you on an administrative hold. We are in the process of initiating the Potential Quality Issue (PQI) process available to VA under our contracts with the TPAs. During this process, the TPAs will look into the concerns raised and make recommendations for any potential action that VA may want to consider. While this process plays out, VA will not issue any new referrals to Allpro. Once VA has submitted the PQI, you may receive notification from the TPAs. You can reach out to the appropriate TPAs to inquire further about the PQI process.

(Doc. No. 6-4, at PageID# 116). The Potential Quality Issue ("PQI") process referenced in the letter, is described in the contracts between the TPAs and the VA. (*See* Doc. Nos. 19-1, 19-2

3

(excerpts from VA contracts with Optum and TriWest).[2] Pursuant to these contracts, the TPAs are required to "identify, track, trend, and report interventions to resolve any Potential Quality Issues (PQI)." (Doc. No. 19-1 at PageID# 238; Doc. No. 19-2 at PageID# 253-54). The TPA contracts provide that most PQI's must be completed within 90-180 days from the date of identification.[3] (*Id*.). The PQI process described in the contracts does not contain any reference to administrative hold on care providers during the PQI process or otherwise.

The VA submitted PQIs to each TPA relating to Allpro on December 23, 2025, the day after Allpro initiated this lawsuit. (Palmer Decl., Doc. No. 19, ¶ 17). In the Verified Complaint, Allpro complains that the VA did not provide notice of the hold until almost a month after it had been instituted, and did not provide any information about the decision-making process, how long the hold would be in place, or any process to challenge it, and the limited information the VA eventually provided was insufficient to allow Allpro to formulate a response. (Doc. No. 1, ¶¶ 5, 84-85, 92, 98-102). Without new referrals or at least renewals of existing referrals, Allpro claims it will run out of existing clients and will operate at a loss by the end of March 2026. (Doc. No. 1, ¶ 104).

---

[2] In its response, the VA describes these contracts as "contracts between Plaintiff and VA's third party administrators, Optum and TriWest." (*See* Doc. No. 18 at 6). But this appears to be a mistake. Andrew Palmer, the VA's Program Management Officer, states in his Declaration, that the referenced contracts are actually between the VA and Optum and TriWest. (*see* Doc. No. 19, ¶¶ 12, 13; Doc. No. 19-1 (excerpts from contract between VA and Optum); Doc. No. 19-2 (excerpts from contract between VA and TriWest)).

[3] The VA's contracts with both TPAs require the TPAs to process 95% of PQIs within 90 days and 99% within 180 days. (Doc. No. 19-1 at PageID# 238-39). The Optum contract allows "PQI/IQI cases requiring Corrective Action Plans (CAPs) [to] be completed outside of the 90/180- day limit, if required." (*Id*.). The TriWest contract does not include that provision. (Doc. No. 19-2 at PageID # 253-54).

The Verified Complaint asserts claims under the APA and for violation of Due Process. (Doc. No. 1). In its Motion for Temporary Restraining Order ("TRO"), Allpro seeks to enjoin the VA from enforcing the Provider Hold and from reassigning Allpro's veteran clients, and ordering it to resume referral processing in the pre-hold ordinary course of business, to provide Allpro notice and a hearing on its grounds for issuing the Provider Hold consistent with APA and constitutional due process requirements, and to disclose "whatever manual it uses—if any—for its Provider Hold process and all documents, communications, and information relevant to the matters in this case." (*See* Doc. No. 6).

The VA responded in opposition to the motion for TRO based, in part, on the potential harm to veterans and taxpayers. The VA argued that "it is undisputed that dozens of complaints triggered" an involuntary administrative hold on Allpro's account. (Doc. No. 18 at 9). The Court ordered the VA to supplement its response with documentation of the specific complaints that triggered the administrative hold and to provide information concerning any procedures, official or unofficial, written or unwritten, applicable to the decision to implement an administrative Provider Hold. (Doc. No. 20). The VA then filed a chart listing complaints received during the past five years related to Allpro services, including complaints of false billing for services not provided.[4]

---

[4] Fifty-one of the complaints were made prior to the institution of the provider hold. (Doc. No. 27-1). The list also includes five complaints received after the VA instituted the provider hold. (*Id*.). These include complaints of billing for services not rendered and one complaint that a provider attempted to render care without a current authorization. (*Id*.). The chart does not indicate the resolution of these complaint, but the supporting documentation shows that many of the complaints were closed with AllPro receiving "guidance." On at least one instance in December 2024, after it was determined that AllPro billed for services not rendered, AllPro refunded $17,932.61 and TriWest "provided education" to AllPro regarding the "importance of proper documentation." (Doc. No. 27 (citing PageID # 438-39)). In later filings, the VA states that it has continued to receive complaints about AllPro. (Decl. of Adina Kriss, Doc. No. 36).

AllPro responded that the VA's supplemental filing was the first time it learned of the basis for the provider hold and asserted that many of the complaints presented by the VA had been closed or resolved. (Doc. No. 28; Decl. of Samantha Bryson, Doc. No. 29-3). Allpro also argued that given its growth over the past five years and size – almost 1,500,000 hours of care and $62.4 million in revenue in 2025 – the complaints involve less than 1% of its activity, employees, veterans, and revenue.

The Court scheduled a hearing for February 3, 2026, which was continued to February 18, 2026, at the request of the parties to allow them time to discuss a potential resolution. (*See* Doc. No. 31). Ultimately, efforts at resolution were unsuccessful. The day before the rescheduled hearing date, the VA filed a motion to dismiss for lack of subject matter jurisdiction. (Doc. No. 32). Allpro responded to the motion the same day. (Doc. No. 34).

No witnesses testified at the hearing. The parties presented argument on the issues raised in the motion for TRO and the motion to dismiss. At the conclusion of the hearing the Court reserved ruling on both motions. The Court has since received the VA's reply in support of its motion to dismiss. (Doc. No. 35).

The Court now turns to the substance of the pending motions. In its motion to dismiss, the VA asserts the Court lacks subject matter jurisdiction to hear the case because the subject of the complaint is committed to the exclusive control of the VA, the Board of Veterans Appeals, and the Federal Circuit under 38 U.S.C. § 511(a). (*See* Doc. No. 33). The VA also argues it is immune from suit because the waiver of sovereign immunity in the Administrative Procedure Act does not apply. (*See* Doc. Nos. 18, 33).

Whether a court has subject-matter jurisdiction is a "threshold determination" in any action. *Am. Telecom Co. v. Republic of Lebanon*, 501 F.3d 534, 537 (6th Cir. 2007). This reflects the

fundamental principle that "[j]urisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (quoting *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1868)); *see also*, *Wayside Church v. Van Buren Cty.*, 847 F.3d 812, 816 (6th Cir. 2017) (explaining that courts "are 'bound to consider [a] 12(b)(1) motion first, since [a] Rule 12(b)(6) challenge becomes moot if th[e] court lacks subject matter jurisdiction"), *overruled on other grounds as recognized in Freed v. Thomas*, 81 F.4th 655 (2023).

Accordingly, the Court begins with the VA's motion to dismiss.

## II. STANDARD OF REVIEW

The party asserting subject-matter jurisdiction bears the burden of establishing that it exists. *Ammons v. Ally Fin., Inc.*, 305 F. Supp. 3d 818, 820 (M.D. Tenn. 2018). A motion to dismiss under Rule 12(b)(1) for lack of subject-matter jurisdiction "may either attack the claim of jurisdiction on its face or it can attack the factual basis of jurisdiction." *Golden v. Gorno Bros., Inc.*, 410 F.3d 879, 881 (6th Cir. 2005). A facial attack challenges the sufficiency of the pleading and, like a motion under Rule 12(b)(6), requires the Court to take all factual allegations in the pleading as true. *Wayside Church*, 847 F.3d at 816–17 (quoting *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007)). A factual attack challenges the allegations supporting jurisdiction, raising "a factual controversy requiring the district court to 'weigh the conflicting evidence to arrive at the factual predicate that subject-matter does or does not exist." *Id*. at 817 (quoting *Gentek Bldg. Prods., Inc.*, 491 F.3d at 330). District courts reviewing factual attacks have "wide discretion to allow affidavits, documents and even a limited evidentiary hearing to resolve disputed jurisdictional facts." *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.3d 320, 325 (6th Cir. 1990).

7

Here the VA argues that the Court does not have jurisdiction to hear the case because the Veterans Judicial Review Act ("VJRA"), Pub. L. No. 100-687, Div. A, § 101, 102 Stat. 4105 (1988), precludes review and because the VA has not waived sovereign immunity. A motion to dismiss a complaint filed against the United States on the ground that the plaintiff's claim is barred by the doctrine of sovereign immunity is treated as a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), Federal Rules of Civil Procedure, *Cooley v. United States*, 791 F.Supp. 1294, 1298 (E.D. Tenn. 1992).

### III.  ANALYSIS

**A.  The VJRA**

The VA argues the Court does not have jurisdiction to hear the claims asserted in this case because the VJRA precludes judicial review by the district courts and establishes a framework for the adjudication of claims related to veterans' benefits. (Doc. No. 33 at 2 (citing *Veterans for Common Sense v. Shinseki*, 678 F.3d 1013, 1022-23 (9th Cir. 2012) ("First, Congress has expressly disqualified [district courts] from hearing cases related to VA benefits in [38 U.S.C.] § 511(a) ('may not be reviewed by any ... court'), and second, Congress has conferred exclusive jurisdiction over such claims to the Veterans Court and the Federal Circuit, *id.* §§ 511(b)(4), 7252(a), 7292(c).")).

"For questions of statutory interpretation, [courts] look to the statutory language as the starting point for interpretation, and [] the ending point if the meaning of that language is clear." *Davenport v. Lockwood, Andrews & Newnam, Inc.*, 854 F.3d 905, 909 (6th Cir. 2017). "The words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Greenbaum v. EPA*, 370 F.3d 527, 537 (6th Cir. 2004) (internal quotation marks and citation omitted). "[C]ourts presume that Congress means to adopt 'clear boundaries' in

'jurisdictional statutes' to avoid wasteful litigation over the proper forum." *Kentucky v. EPA*, 123 F.4th 447, 460 (6th Cir. 2024) (quoting *Direct Mktg. Ass'n v. Brohl*, 575 U.S. 1, 11 (2015)).

The Sixth Circuit has recognized that the VJRA, specifically Section 511(a), "creates a broad preclusion of judicial review of VA decisions." *Beamon v. Brown*, 125 F.3d 965, 970 (6th Cir. 1997). Section 511(a) expressly reserves "all questions of law and fact necessary to a decision by the Secretary under a law that affects the provision of benefits by the Secretary to veterans or the dependents or survivors of veterans" to the Secretary of the Veterans Administration. 38 U.S.C. § 511(a). Subject to only a few exceptions, "the decision of the Secretary as to any such question shall be final and conclusive and may not be reviewed by any other official or by any court, whether by an action in the nature of mandamus or otherwise." *Id*.

The Secretary's decision "under a law that affects the provision of benefits by the Secretary to veterans" is subject to review only within the framework established by the VJRA. 38 U.S.C. § 511(a); 38 U.S.C. §§ 7104, 7252(a) and 7292. The framework establishes the Board of Veterans Appeals ("BVA") as a first level of review of "all questions in a matter which under section 511(a) [] is subject to decision by the Secretary." 38 U.S.C. § 7104. The Court of Appeals for Veterans Claims ("CVA"), an Article I court, has exclusive jurisdiction to review BVA decisions. 38 U.S.C. § 7252(a). The CVA has authority to "decide all relevant questions of law," including constitutional questions and to set aside decisions found to be "arbitrary, capricious, an abuse of discretion," "contrary to constitutional right," or otherwise unlawful. 38 U.S.C. § 7261(a)(1). The Court of Appeals for the Federal Circuit, an Article III court, has exclusive appellate jurisdiction over decisions of the CVA. *See* 38 U.S.C. § 511(a); 38 U.S.C. §§ 7252(a) and 7292.

The VA argues Section 511(a) precludes review here because the Secretary's decision to suspend referrals to Allpro is "a decision [] under a law that affects the provision of benefits." The

VA asserts that the relevant law is the VA MISSION ACT of 2018, Pub, L. 115-182, specifically Section 101, which established the Veterans Community Care Program as codified in 38 U.S.C. § 1703. The statute creates a comprehensive program for providing care to veterans and is the statutory basis for the program under which Allpro provides care to veterans. *See* 38 U.S.C. § 1703(h) (allowing the Secretary to enter into contracts to establish networks of health care providers for purposes of providing veterans sufficient access to hospital care, medical services, or extended care services); § 1703(h)(2)(B) (providing that the Secretary is responsible for the scheduling of appointments for medical services). The VA argues that its determinations to authorize care and issue referrals, including which health care companies receive or do not receive referrals is "a decision by the Secretary under a law that affects the provision of benefits [ ] to veterans" and is therefore subject to the exclusive jurisdiction of the VJRA.

Allpro argues Section 511(a) does not apply here because it is challenging the provider hold prior to any "decision" by the Secretary. (Doc. No. 34 at 4). Allpro also argues that because there is no law or regulation specifically allowing for a provider hold, the Secretary's imposition of the hold is *ultra vires* – *i.e.*, not "under a law." And Allpro argues that its participation in the Community Care Network is not a "benefit to veterans." In sum, Allpro contends that the court is not precluded from hearing its claims because the VA's administrative hold is not a "decision," there is "no law," and its participation in the Community Care Network is not a benefit to veterans.

The language of Section 511(a) is broad. *See Beamon*, 125 F.3d at 970 (Section 511 "creates a broad preclusion of judicial review of VA decisions."). It expressly applies to "all questions of law and fact necessary to a decision by the Secretary under a law that affects the provision of benefits by the Secretary to veterans." 38 U.S.C. § 511(a). Allpro's interpretation is overly narrow. Although "decision" has a formal meaning within the context of veterans' benefits

decisions, nothing in Section 511(a) restricts the meaning of "decision" to that context. The ordinary meaning of "decision" is simply "the act or process of deciding." *See* www.merriam-webster.com/dictionary/decision (last visited March 3, 2026). Of course, a decision could refer to a formal written decision, but there is no indication that Section 511(a) was intended to be restricted to formal written decisions. Indeed, under the VJRA, the CVA has authority to compel action unlawfully withheld or unreasonably delayed or to set aside "decisions, findings, … conclusions, rules, and regulations," suggesting that Section 511 is not limited to formal decisions. See 38 U.S.C. § 7261.

Even if the "decisions" referenced in Section 511 are formal veteran's benefits decisions, preclusion broadly applies to "decisions under a law that affects the provision of benefits." Here the applicable law is the law that established Community Care Networks, 38 U.S.C. § 1703, as part of the provision of benefits to veterans. Allpro's argument that the administrative hold is not "under a law" because neither the statute nor the implementing regulations provide for such a hold, takes an overly myopic view of "law." In this context, the meaning of the term "law" is either to a law passed by Congress or a specific statute. *See Bates v. Nicholson*, 398 F.3d 1355, 1361 (Fed. Cir. 2005) (citing the Constitution of the United States, Art. I, § 7, cl. 2; and 2 U.S.C. § 106a (2000)). The Secretary's actions are plainly "under" Section 1703, which is undeniably a law that affects the provision of benefits to veterans. In fact, the entire purpose of the statute is to provide benefits to veterans. 38 U.S.C. § 1703(a)(1) ("There is established a program to furnish hospital care, medical services, and extended care services to covered veterans through health care providers specified [in the statute]."). It is undisputed that under the system established pursuant to Section 1703, the VA decides whether to refer a veteran for care and which provider gets that

11

referral. These decisions are plainly "under a law that affects the provision of benefits [ ] to veterans."

Allpro correctly observes that that vast majority of cases to have considered the preclusive application of Section 511(a) are claims brought by veterans seeking to challenge the VA's medical benefits determinations. However, the Court finds no justification for limiting the reach of Section 511(a) to such cases. As noted above, Section 511(a) "creates a broad preclusion of judicial review of VA decisions." *Beamon* 125 F.3d at 970. Although challenges to VA decisions by non-veteran claimants are less common, courts to have considered such claims have found Section 511(a) applies. *See Bates v. Nicholson*, 398 F.3d 1355, 1359 (Fed. Cir. 2005) (finding attorney's claim challenging the VA's termination of his accreditation was subject to review by the Board of Veterans' Appeals under Section 511(a)); *Institute of Business and Technology Careers v. Illinois Dep't of Veterans Affairs*, No. 25 C 2033, 2025 WL 3079213 (N.D. Ill., Nov. 4, 2025) (finding an educational institution's claim challenging the VA's decision and decision making process related to approval of courses for purposes of G.I. Bill eligibility was subject to dismissal for lack of jurisdiction pursuant to the VJRA because the approval or disapproval of eligible courses was "under a law that affects the provision of benefits").

Allpro's assertion that the VA action violates due process does not exclude its claim from the scope of Section 511(a). When Congress created the Veterans Court, it expressly empowered that court to "decide all relevant questions of law, interpret constitutional, statutory, and regulatory provisions, and determine the meaning or applicability of the terms of an action of the Secretary." 38 U.S.C. § 7261(a)(1). Constitutional review of VA procedures, or lack thereof, is subject to adjudication within the VJRA framework. *See Beamon*, 125 F.3d at 974 (finding the plaintiffs' claims challenging the constitutionality of the procedures by which the VA adjudicates claims for

benefits are questions within the exclusive jurisdiction of the BVA, the CVA, and the Court of Appeals for the Federal Circuit). Courts have recognized an exception that would allow district courts to review facial constitutional challenges to acts of Congress. *Id*. at 973 (citing *Disabled Am. Vets. v. U.S. Dep't of Veterans Affairs*, 962 F.2d 136 (2d Cir. 1994); and *Johnson v. Robison,* 415 U.S. 361, 365 (1974)). This case does not raise such a challenge.

In summary, because Plaintiff's claims challenge Secretary's decision "under a law that affects the provision of benefits by the Secretary to veterans," pursuant to Section 511(a), the Court lacks subject matter jurisdiction. The Court also lacks subject matter jurisdiction because the United States has not waived sovereign immunity.

**B.     Sovereign Immunity**

"The United States, as sovereign, is immune from suit save as it consents to be sued, and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Sherwood*, 312 U.S. 584, 586 (1941) (citations omitted). "Without a waiver of sovereign immunity, a court is without subject matter jurisdiction over claims against federal agencies or officials in their official capacities." *Muniz-Muniz v. U.S. Border Patrol*, 741 F.3d 668, 671 (6th Cir. 2013). "It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *Id.* (quoting *Munaco v. United States*, 522 F.3d 651, 652-53 (6th Cir. 2008)). "Sovereign immunity 'extends to agencies of the United States' or 'federal officers [acting] in their official capacities.'" *Id*. (citing *Whittle v. United States*, 7 F.3d 1259, 1262 (6th Cir.1993); *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 510 (2d Cir.1994)). "A waiver of sovereign immunity may not be implied and exists only when Congress has expressly waived immunity by statute." *Id*. (citing *United States v. Nordic Village, Inc.*, 503 U.S. 30, 33–34 (1992)); *Beamon*, 125 F.3d at 967 ("a waiver of sovereign

immunity 'must be clear, express, and unambiguous'") (citing *United Liberty Life Ins. Co. v. Ryan*, 985 F.2d 1320, 1325 (6th Cir. 1993).

Plaintiff relies upon the waiver of sovereign immunity under Administrative Procedures Act ("APA"), 5 U.S.C. § 706(1). But this waiver has important limitations that are applicable here. First, the APA expressly does not apply to cases in which "statutes preclude judicial review." 5 U.S.C. § 701(a)(1). Second, under the APA, the Court may only review "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. As discussed above, the VJRA is a statute that precludes judicial review and establishes an adequate remedy in a court. Therefore, the waiver of sovereign immunity in the APA does not apply and Plaintiff's claims must be dismissed for lack of subject matter jurisdiction.

### IV. CONCLUSION

For the reasons stated, the Court lacks subject matter jurisdiction over the claims in this case. Accordingly, the VA's motion to dismiss (Doc. No. 32) is **GRANTED** and this case **DISMISSED**. Allpro's Motion for Temporary Restraining Order (Doc. No. 6) is **DENIED**.

An appropriate Order will enter.

_____
WILLIAM L. CAMPBELL, JR.
CHIEF UNITED STATES DISTRICT JUDGE